Davis, J.,
delivered the opinion of the court:
The Ganges, a merchant vessel of the United States sailing from Batavia to Gothenburg, was forced to put into the Isle de France for repairs in February, 1798, where she was seized, condemned, and sold by the French authorities.. A substantial contest in this case is between the several plaintiffs claiming* title in the vessel. The claim of title is briefly this: Thomas Whippo, Charles P. Rogers, and Thomas Yermilya purchased the vessel in 1795, Whippo taking one-half and Rogers and Yermilya a quarter each. Thomas Whippo soon sold one-half his interest (that is, one quarter of the whole) to his brother Isaac Whippo. Rogers and Yermilya were copartners, doing-business in New York, and as Rogers was about to leave for Europe he gave a broad power of attorney to his partner, Yer-milya. Soon after Thomas Whippo gave similar authority to Yermilya. Thus Yermilya had control of three-quarters of the ship, the one-quarter held by Isaac Whippo being outstanding.
Thereupon Yermilya made an agreement with one Lloyd, wherein he assumed to sell not three-quarters alone, but ‘‘all and every part of the said ship Ganges,” and covenanted that he had £i good right, full power, and lawful authority to bargain, sell, or convey the said ship Ganges.” Upon the same day Lloyd conveyed back to Yermilya all and every part of the said ship Ganges. This brings the date to August 12, 1796. The following 21st of December Isaac Whippo sold his share of the Ganges to Rogers; upon that day, therefore, the apparent title thus stood: Three-quarters in Yermilya, one-quarter in Rogers, and at this point the contention begins between those repre-. senting the respective interests of Rogers and Yermilya. January 30,1797, Yermilya sold the vessel to James Jarvis, selling “all aud every part” as before, but this time he, in fact, could convey the whole, as the powers of attorney from Rogers and Thomas Whippo and his own title put the whole vessel under *190 bis control. With tbe entire legal title thus in Jarvis, tbe vessel started upon ber unfortunate voyage.
It is apparent tliat during tbe period covered by this case tbe firm of Eogers & Yermilya were in financial difficulties. There have been intimations during tbe argument of bad faith upon tbe part of Yermilya, but we find nothing in the record to sustain such a theory; on tbe contrary, he appears to have been struggling well to keep up tbe firm’s credit. Tbe two Whippos, Eogers, and Yermilya were much embarrassed financially, and many things appearing in tbe record not pertinent to this contention show a bard struggle to avoid disaster. Under these circumstances, with Eogers in Europe, Yermilya was thrown upon bis own responsibility, and we have no reason to suppose that be acted other than fairly to bis partner’s interests.
It is contended substantially that tbe sale to Lloyd and back to Yermilya operated for tbe benefit of Eogers, which may be so; but that is unimportant, for it is perfectly clear that when tbe sale was made to Jarvis, Yermilya bad complete control over tbe entire ship in this way: He controlled Eogers’ interest (through tbe power of attorney), and Eogers bad recently bought out Isaac Whippo, so Eogers and Yermilya owned three-quarters of the ship, while Thomas Whippo bad given to Yermilya absolute control of bis, tbe remaining quarter. Thus Jarvis became possessed of tbe absolute legal title in all the-ship, while Eogers and Yermilya pass out of tbe case unless there be equities developed.
While upon its face tbe sale to Jarvis was absolute, in fact tbe vessel was conveyed in trust to protect Jarvis against loss of money owed him by tbe firm. Jarvis, however, entered immediately into control of tbe vessel as tbe owner, and apparently bad other transactions with Eogers & Go., which resulted in a formal declaration of trust made in tbe year 1810. In this instrument be certified that be held tbe conveyance of tbe Ganges in trust for tbe creditors “of Thomas Yermilya and Charles P. Eogers,” subject, however, to certain exceptions and reservations, that is, subject to bis claims against tbe firm and Yermilya, and it further appears in this declaration that any balance which may remain of any sum recovered on account of tbe Ganges, after paying Jarvis bis claims with interest, shall “be for account of tbe creditors of Charles P. Eogers and *191 Thomas Yermilya.” Later we find a declaration from Yermilya that “the ship was in the name of James Jarvis” when captured, “and belongs now [1836] to Mary Ann Jarvis, as the only heir of said James Jarvis, and is her sole property.”
The legal title being thus in Jarvis, what course shall be pursued in relation to the creditors, if any there be? Primarily, it must be noted that no creditors are disclosed other than the United States for unpaid duties. Again, that in the Act of March 3,1891 (1 Supp. to Rev. Stat., 2d ed., p. 925), Congress had indicated the policy in this class of cases of ignoring the creditors of bankrupts when they required us to make the award “on behalf of the nest of kin instead of to assignees in bankruptcy.” What we endeavor to ascertain is “ the person in whom the legal title and custody exists; that is to say, the legal representative who in an ordinary action at law or proceeding in equity would be deemed the proper party to maintain an action for the recovery of similar assets of the original claimants.” (The Jane, 24 C. Cls. R., p. 81.) Jarvis possessed the full title in law to the Ganges. Under certain possible conditions the other creditors of Rogers & Co., then bankrupts, might have a claim upon a recovery herein. Whether those conditions will be fulfilled or who are those creditors or what their interests are is not disclosed. Further, the Christophers who filed a claim herein, who has since died, and to whose estate any sum recovered will go, was the next of kin, not only of Jarvis, but also of Yermilya.
Lastly, Christophers, the son-in-law of Jarvis (and then a widower), in 1856 endeavored to assign his interest in this claim to one Lessig, first upon the consideration, among others, that upon recovery for the Ganges loss, Lessig would pay Christophers $10,000, and from and after the date of the assignment Lessig should pay Christophers “the sum of $10 at the expiration of each day and every week until such recovery be had, but such payments shall not be accounted as part of or be deducted from the said sum of $10,000.”. There was a clause of defeasance in this unusual instrument which Lessig soon took advantage of, and it was then agreed that Lessig should have one-half the claim, should prosecute it, and upon recovery pay Christophers one-half “ after the necessary expenses are paid.” What Ohristophers’s interest in the claim was does not appear. His wife was Jarvis’s daughter, and her sons were *192 tbe beneficiaries .(with, tbeir father) under Yermilya’s will. Whether Mrs. Christophers left a will does not appear, so if the assignment be valid we should be unable to determine from the record before us what interest Christophers had to convey. Further, it does not appear that Lessig fulfilled his agreement.
Eemaudeu to law docket to be heard upon the liability of the United States; also upon the amount alleged to be due the United States.